T.C. Memo. 2019-131

UNITED STATES TAX COURT

GEORGIA SARKIN AND SUNEET JAIN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 427-16.                                    Filed October 1, 2019.

Georgia Sarkin and Suneet Jain, pro sese.

<u>Adam B. Landy</u>, <u>Nancy M. Gilmore</u>, and <u>Thomas R. Mackinson</u>, for

respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

NEGA, <u>Judge</u>:  Respondent determined deficiencies in petitioners' Federal

income tax for tax years 2012 and 2013 and accuracy-related penalties under

section 6662(a)[1] as follows:

_____

[1]Unless otherwise indicated, all section references are to the Internal
(continued...)

[*2]

|  | | Penalty |
| Year | Deficiency | sec. 6662(a) |
| 2012 | $7,578 | $1,151.80 |
| 2013 | 13,656 | 2,731.20 |

After concessions,[2] the issues remaining for decision for petitioners' tax years 2012 and 2013 (years at issue) are whether:  (1) Mr. Jain's business reported in Schedule C, Profit or Loss From Business, constituted an activity not engaged in for profit within the meaning of section 183; (2) petitioners are entitled to deductions for moving expenses claimed in their returns; (3) petitioners are entitled to deductions for unreimbursed employee expenses claimed in their Schedules A; and (4) petitioners are liable for the accuracy-related penalties.

---

[1](...continued)
Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]Before trial respondent conceded that petitioners are entitled to:  (1) a reduction of $785 in State refunds, credits, or offsets for tax year 2012 and (2) an increased itemized deduction of $598 for investment interest claimed on their Schedule A, Itemized Deductions, for tax year 2012.  At trial petitioners conceded that they are not entitled to an investment interest deduction of $5,657 claimed on their Schedule A for tax year 2012.

**[\*3]**                          FINDINGS OF FACT

Some of the facts are stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioners resided in New York when the petition was timely filed.

I.     Background

A.     Petitioners' Educational Background

Petitioners are both professional architects and design planners. Suneet Jain received his bachelor's degree in architecture from the New Delhi School of Planning and Architecture in 1991. Georgia Sarkin received bachelor's degrees in architectural studies and architecture from the University of Cape Town in 1984 and the University of KwaZulu Natal in 1987, respectively, as well as her master's degree in architecture in urban design from the Harvard Graduate School of Design in 1994.

B.     Sarkin & Jain Architects & Urban Planners

In 1997 after they each had worked for various private firms around the world as architects and design planners, petitioners founded Sarkin & Jain Architects & Urban Planners (Sarkin Jain) in South Africa. The firm's focus was largely on the design and implementation of development projects in postapartheid

[*4] South Africa, including large-scale urban renewal projects and the reconstruction of inner cities.

### C. Petitioners' Immigration to the United States

In 2002 Ms. Sarkin immigrated to the United States to accept a position as an architect and planner with an architecture firm in New York. In 2004 Mr. Jain immigrated to the United States to join his wife and to help raise the couple's young children in New York. During that time Mr. Jain enrolled at Columbia University to pursue a master's degree in business administration while Ms. Sarkin continued to work as an architect and planner at her architecture firm in New York.

In 2006 Mr. Jain received his master's degree in business administration from Columbia University. Thereafter, from 2006 through 2009 he worked as associate director in New York, New York, for General Electric's Commercial Finance & Real Estate Group (GE).

## II. Mr. Jain's Move to South Africa

In 2009 Mr. Jain lost his job at GE in the aftermath of the financial crisis. For the two years that followed, Mr. Jain was unable to find employment in the commercial real estate sector in New York. Ultimately, Mr. Jain concluded that he

[*5] would not be able to find such employment in New York for the foreseeable future because of the lingering effects of the financial crisis.

In 2011 Mr. Jain decided he should move back to South Africa. He hoped he could create new business opportunities as an architect and planner for himself and his family by capitalizing on the goodwill that he and Ms. Sarkin had created for themselves during their time there.

Accordingly, in late 2011 Mr. Jain moved back to South Africa. Ms. Sarkin continued to raise petitioners' children and work as an architect in New York.

Upon his return to South Africa in late 2011, Mr. Jain converted a portion of his previously owned apartment into an office and reported in Schedule C of his Federal income tax return for the years at issue that he was conducting an offshoot of Sarkin Jain's business as his sole proprietorship. The Schedules C reported that Mr. Jain's business was a real estate consulting business based in New York, New York. Mr. Jain had various meetings with other individuals related to his reported Schedule C business. During that time, however, Mr. Jain failed to record the dates, times, and individuals that he met, and the record does not reflect the amount of time that he spent day to day carrying out the reported Schedule C business. Moreover, while during the years at issue Mr. Jain traveled between the United States and South Africa, petitioners did not keep a contemporaneous log of

[*6] his travel between the United States and South Africa. Further, during the years at issue Mr. Jain did not maintain a separate bank account, hire an accountant, or hire a bookkeeper with respect to the reported Schedule C business.

Mr. Jain used his time in South Africa to remodel Ms. Sarkin's mother's home located there (renovation project). The renovation project consisted of: (1) evicting former tenants; (2) creating the design aspects of the property; (3) gathering the necessary permit approvals from the city; and (4) executing of the renovations. In exchange for his work on the renovation project, petitioner was entitled to 50% of the rental income from the property once Ms. Sarkin's mother began renting the home, as well as 50% of the profit when Ms. Sarkin's mother chose to sell the home. At most, petitioners for the respective years at issue realized gross income of $250 and $4,500, and the record does not reflect that the renovation project ever resulted in a profit for them.

III.   Tax Returns, Notice, and Petition

Petitioners timely filed their joint Forms 1040, U.S. Individual Income Tax Return (return) for tax years 2012 and 2013, which they prepared.[3] Petitioners attached to each of those returns a Schedule C, a Schedule A, Form 2106,

---

[3]We understand petitioners' filing of the joint returns to be their admission that Mr. Jain is subject to the U.S. taxing regime for the years at issue. We add that petitioners have not argued to the contrary.

[*7] Employee Business Expenses, and Form 3903, Moving Expenses.  In each of

those Schedules C, petitioners reported the following:

|  | 2012 | 2013 |
|---|---|---|
| Gross income | $250 | $4,500 |
| Expense: | | |
| Advertising | 110 | 200 |
| Car and truck | 1,790 | 1,139 |
| Contract labor | 5,000 | 250 |
| Depreciation & sec. 179 | 1,114 | 2,150 |
| Legal & professional services | 450 | 4,400 |
| Office | 550 | 1,200 |
| Repairs & maintenance | 7,500 | 5,500 |
| Supplies | 655 | 350 |
| Taxes & licenses | -0- | 440 |
| Travel | 4,500 | 1,200 |
| Deductible meals and entertainment | 275 | 125 |
| Utilities | 2,055 | 600 |
| Other--Bank fees | 250 | 128 |
| Other--Printing & reproduction | 350 | 155 |
| Other--Internet service provider | 350 | 300 |
| Other--Business cards & stationery | 50 | 45 |
| Other--Cell phones | -0- | 450 |

[*8]

| | | |
|---|---|---|
| Total expenses | 24,999 | 18,632 |
| Total profit (loss) | (24,749) | (14,132) |

Petitioners used their losses to offset other income for the years at issue.

In their Schedules A, petitioners claimed deductions for unreimbursed employee expenses of $17,640 and $27,217 for tax years 2012 and 2013, respectively.[4]  In the Forms 2106, petitioners claimed deductions for unreimbursed employee expenses which consisted of:

| Expense | 2012 | 2013 |
|---|---|---|
| Vehicle | -0- | $4,238 |
| Parking fees, tolls, and transportation | $550 | 3,086 |
| Business (not including vehicle, parking fees, tolls, and transportation, and travel) | 16,840 | 19,137 |
| Meals and entertainment | 500 | 1,510 |
| Total | 17,890 | 27,971 |

In their Forms 3903 petitioners claimed deductions for moving expenses of $10,850 and $8,746 for tax years 2012 and 2013, respectively.

On October 1, 2015, respondent issued petitioners a notice of deficiency for tax years 2012 and 2013.  In that notice, respondent disallowed all of the Schedule

---

[4]Mr. Jain filed a Form 2106 for both years at issue while Ms. Sarkin filed a Form 2106 for tax year 2013.

[*9] C deductions because respondent determined that the Schedule C activity did not meet the guidelines of carrying on a trade or business within the meaning of section 162. Further, respondent denied all of petitioners' deductions for moving expenses and employee business expenses and determined that petitioners are liable for accuracy-related penalties under section 6662(a).

On January 5, 2016, petitioners timely filed a petition for redetermination of the deficiencies and the accuracy-related penalties.[5]

OPINION

I.      Section 183

Section 162(a) allows a taxpayer to deduct "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business". In general, however, a taxpayer may not deduct expenses incurred in connection with activities not engaged in for profit, such as activities primarily carried on as sport, as a hobby, or for recreation, to offset taxable income from other sources. Sec. 183(a) and (b); sec. 1.183-2(a), Income Tax Regs. Section 183(c) defines an "activity not engaged in for profit" as "any activity other than

_____

[5]The last day for petitioners to file a petition with the Court was December 30, 2019. The Court received petitioners' petition on January 5, 2016. Because the envelope in which it was mailed bore a United States Postal Service postmark dated December 26, 2015, the petition is treated as timely filed. See sec. 7502(a); sec. 301.7502-1(c)(1), Proced. & Admin. Regs.

**[\*10]** one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212."

The expectation of profit need not have been reasonable; however, the taxpayer must have entered into the activity, or continued it, with the actual and honest objective of making a profit. Ranciato v. Commissioner, 52 F.3d 23, 25 (2d Cir. 1995), vacating and remanding T.C. Memo. 1993-536; Hulter v. Commissioner, 91 T.C. 371, 393 (1988); sec. 1.183-2(a), Income Tax Regs. Whether the taxpayer had the requisite profit objective is determined by looking at all the facts and circumstances. Golanty v. Commissioner, 72 T.C. 411, 426 (1979), aff'd without published opinion, 647 F.2d 170 (9th Cir. 1981); sec. 1.183-2(a), Income Tax Regs. We give greater weight to objective facts than to a taxpayer's statement of intent. Thomas v. Commissioner, 84 T.C. 1244, 1269 (1985), aff'd, 792 F.2d 1256 (4th Cir. 1986); sec. 1.183-2(a), Income Tax Regs. Evidence from years outside the years at issue is relevant to the extent it allows inferences regarding the taxpayer's requisite profit objective in the subject years. See, e.g., Smith v. Commissioner, T.C. Memo. 1993-140.

Pursuant to section 183(d), an activity is presumed to be engaged in for profit if the activity produces gross income in excess of deductions for any three of the five consecutive years which end with the taxable year, unless the

**[*11]** Commissioner establishes to the contrary. <u>See</u> <u>Wadlow v. Commissioner</u>, 112 T.C. 247, 250 (1999). Mr. Jain's reported Schedule C business failed to produce gross income in excess of deductions during the years at issue. Nor does the record establish that it ever produced gross income in excess of deductions for purposes of invoking the presumption. Accordingly, the presumption does not apply in this case.

The Commissioner's determinations in a notice of deficiency are generally presumed correct, and the taxpayer ordinarily bears the burden of proving those determinations erroneous. Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933). If, however, the taxpayer produces credible evidence with respect to any factual issue relevant to ascertaining his tax liability and meets certain other requirements, the burden of proof shifts from the taxpayer to the Commissioner as to that factual issue. Sec. 7491(a)(1) and (2). Because we decide the section 183 issue on the preponderance of the evidence, the burden of proof is irrelevant. <u>See</u> <u>Knudsen v. Commissioner</u>, 131 T.C. 185, 188-189 (2008), <u>supplementing</u> T.C. Memo. 2007-340.

Petitioners testified that their plan required Mr. Jain to physically move to Durban, South Africa, as opposed to conducting work remotely from the United States or through periodic visits because petitioners believed it was necessary to

**[*12]** have a physical presence in order to bid on, engage in, and acquire new projects in the area. Further, petitioners testified that because of the country's isolation during the apartheid years, the people of South Africa would prefer to conduct business with people that had a local presence instead of working with those located abroad. Upon arrival in South Africa, Mr. Jain testified, he intended to form a consortium with other local companies to revive certain development projects that were planned by Sarkin Jain but not carried out in the early 2000s. Further, he testified, petitioners planned to engage in any project in South Africa, including the renovation project, to reinstate and reinforce his company's position within the community as it had previously been with Sarkin Jain before petitioners moved from South Africa. Mr. Jain testified that he believed the renovation project would show the community of Durban that: (1) Mr. Jain is back in Durban with a new firm; (2) his new firm has the resources to complete such projects just as Sarkin Jain had from 1996 through 2001; and (3) his new firm is already engaged in projects within the community, no matter how small.

We heard Mr. Jain's testimony but decline to rely solely on his spoken words. Section 1.183-2(b), Income Tax Regs., provides a nonexclusive list of factors to consider in evaluating a taxpayer's profit objective, such as: (1) the manner in which the taxpayer carried on the activity; (2) the expertise of the

[*13] taxpayer or his or her advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that the assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or loss with respect to the activity; (7) the amount of occasional profits earned, if any; (8) the financial status of the taxpayer; and (9) whether elements of personal pleasure or recreation were involved. No single factor is determinative of the taxpayer's intention to make a profit, and more weight may be given to some factors than others. Golanty v. Commissioner, 72 T.C. at 426; see Dunn v. Commissioner, 70 T.C. 715, 720 (1978), aff'd on another issue, 615 F.2d 578 (2d Cir. 1980); sec. 1.183-2(b), Income Tax Regs. We examine each of these factors in turn.

A.    Manner in Which Activity Is Conducted

The fact that the taxpayer carries on an activity in a businesslike manner may indicate a profit motive. Sec. 1.183-2(b)(1), Income Tax Regs. This determination requires that we consider whether the taxpayer: (1) maintained complete and accurate books and records; (2) conducted the activity in a manner resembling that in which successful practitioners conduct similar business activities; (3) changed operating methods, adopted new techniques, or abandoned

**[\*14]** unprofitable activities in a manner consistent with an intent to improve profitability; and (4) prepared a business plan.  Id.; see Keating v. Commissioner, T.C. Memo. 2007-309, 2007 WL 2962774, at \*4 ("Numerous court opinions mention that a businesslike operation often would involve a business plan."), aff'd, 544 F.3d 900 (8th Cir. 2008).

Petitioners did not have a written business plan.  The reported Schedule C business did not have its own bank account; instead, all of the expenses were paid from petitioners' personal checking account and with their credit cards.  In fact, the record is devoid of any credible evidence that petitioners engaged in any meaningful financial management with respect to the reported Schedule C business.  See Foster v. Commissioner, T.C. Memo. 2012-207, 2012 WL 3000350, at \*5.

Further, although Mr. Jain testified that he kept track of his reported Schedule C business' income and expenses, along with the underlying source documentation, the evidence demonstrates that his recordkeeping was nothing more than a conscious attention to detail.  See Golanty v. Commissioner, 72 T.C. at 430.

While a taxpayer need not maintain a sophisticated cost accounting system, the taxpayer should keep records that make informed business decisions possible.

**[\*15]** See Burger v. Commissioner, 809 F.2d 355, 359 (7th Cir. 1987), aff'g T.C. Memo. 1985-523. For a taxpayer's books and records to indicate a profit motive, the books and records should enable the taxpayer to cut expenses, generate or increase profits, or evaluate the overall performance of the operation. See Abbene v. Commissioner, T.C. Memo. 1998-330, 1998 WL 643647, at \*6. Mr. Jain did not use the reported Schedule C business' records to do any of these things, nor does the record show that the records kept were sufficient to enable him to manage the financial aspects of the reported Schedule C business. See Keating v. Commissioner, 2007 WL 2962774, at \*5.

Accordingly, this factor favors respondent.

B.      Expertise of Taxpayer or His Advisers

Preparation for an activity by the study of its accepted business, economic, and scientific practices, or consultation with those who are experts therein, may indicate a profit motive. Sec. 1.183-2(b)(2), Income Tax Regs.; see Engdahl v. Commissioner, 72 T.C. 659, 668 (1979).

We decline to find that Mr. Jain conducted a basic investigation of the potential profitability of the Schedule C activity. Instead, the record establishes that he relied on his extensive knowledge, familiarity, and expertise with respect to city planning and development in South Africa. We note that Mr. Jain has

[*16] relevant work experience as well as the requisite educational background to conduct a city planning and architecture business. However, the record is devoid of documentation or other evidence to corroborate previous dealings within South Africa.

Mr. Jain had no expertise or experience in renovation of personal residences such as the renovation project. Further, Mr. Jain did not undertake any other projects while in South Africa.

We find this factor to be neutral.

C.     Taxpayer's Time and Effort Devoted to the Activity

The fact that a taxpayer devotes much of his personal time and effort to carrying on an activity may indicate an intention to derive a profit, particularly if the activity does not have substantial personal or recreational aspects. Sec. 1.183-2(b)(3), Income Tax Regs. If, however, a taxpayer spends little time on the activity but hires a competent and qualified person to carry on the activity, a profit motive may still be indicated. Id.

While the record does indicate Mr. Jain returned to South Africa in 2011, he did not spend the following two-year period entirely in South Africa. Even if we assume arguendo that he did, the record does not indicate how many hours per day

[*17] he actually spent on his reported Schedule C business, and our impression from the record is that he did not spend much time at all.

Accordingly, this factor favors respondent.

D.  Expectation That Assets Used in the Activity May Appreciate

An expectation that assets used in the activity will appreciate in value and therefore may produce an overall economic profit may indicate a profit motive even if the taxpayer derives no operational profit.  Sec. 1.183-2(b)(4), Income Tax Regs.  A profit objective, however, may be inferred from such expected appreciation of the activity's assets only where the expected appreciation exceeds the operating expenses and would be sufficient to recoup the accumulated losses of prior years.  Foster v. Commissioner, 2012 WL 3000350, at *7; see Golanty v. Commissioner, 72 T.C. at 427-428.

The only asset petitioners owned was their previously owned apartment that Mr. Jain was using as an office for the tax years at issue.  Aside from that, petitioners did not hold any assets, much less indicate whether those assets were expected to appreciate.[6]

_____

[6]To the extent petitioners contend that they had expectations that the subject property in the renovation project would appreciate, we note that that property is not an asset of the reported Schedule C business; rather it is an asset of Mr. Jain's mother-in-law, the owner of that property.

**[*18]** Accordingly, this factor favors respondent.

E.     Taxpayer's Success in Carrying On Similar or Dissimilar Activities

The fact that a taxpayer engaged in similar activities and converted them from unprofitable to profitable enterprises may indicate that the taxpayer is engaged in the present activity for profit, even though the activity is presently unprofitable. Sec. 1.183-2(b)(5), Income Tax Regs.

Petitioners testified that their previous business activity in South Africa designed and developed plans for many projects, but only a few were actually executed and constructed, because of the city of Durban's alleged inability to gather the requisite financing and private investment. However, the record lacks any documentation, records, or books of petitioners' previous South African activity. Thus, the Court cannot determine whether the previous dealings in South Africa were successful.

However, the renovation project does not resemble the kind of work petitioners testified to completing in the past or the type of work they were seeking in South Africa. Further, most of the reported expenses related to the renovation project, as there is no evidence outside of preliminary emails relating to any other project. The Court finds that the renovation project, the only project Mr. Jain

[*19] undertook, was not similar to the work he testified to completing previously in South Africa.

Accordingly, this factor favors respondent.

F.    Taxpayer's History of Income or Loss From the Activity

A taxpayer's history of income or loss with respect to an activity may indicate the presence or absence of a profit motive. Sec. 1.183-2(b)(6), Income Tax Regs. A series of losses during the initial stage of an activity does not necessarily indicate a lack of profit motive. Engdahl v. Commissioner, 72 T.C. at 669; sec. 1.183-2(b)(6), Income Tax Regs. The goal, however, must be to realize a profit on the entire operation, which presupposes not only future net earnings but also sufficient net earnings to recoup losses incurred in the intervening years. See Bessenyey v. Commissioner, 45 T.C. 261, 274 (1965), aff'd, 379 F.2d 252 (2d Cir. 1967).

For the years at issue petitioners reported net losses of $24,749 and $14,132 in the 2012 and 2013 Schedules C, respectively. Further, Mr. Jain abandoned the reported Schedule C business in 2014 to move back to the United States to be with his wife and children. The record is devoid of evidence that these losses were recouped.

Accordingly, this factor favors respondent.

[*20] G.    Amount of Occasional Profits Earned

The amount of occasional profits earned in relation to the amount of losses incurred, the amount of investment, and the value of assets used in the activity may indicate a profit motive. Sec. 1.183-2(b)(7), Income Tax Regs. The opportunity to earn substantial profits in a highly speculative venture may ordinarily be sufficient to indicate that the activity is engaged in for profit even though losses or only occasional small profits are actually generated. Id.

Mr. Jain never earned a profit from the reported Schedule C business. Accordingly, this factor favors respondent.

H.    Taxpayer's Financial Status

A lack of substantial income from sources other than the activity may indicate that the activity is engaged in for profit. Id. subpara. (8). Substantial income from sources other than the activity (particularly if losses from the activity generate substantial tax benefits) may indicate the activity is not engaged in for profit, especially if personal or recreational elements are involved. Id.; see Golanty v. Commissioner, 72 T.C. at 429.

Directly before the years at issue Mr. Jain was unemployed. During the years at issue he did earn a limited income from the reported Schedule C business; but the income was offset by the related expenses, and in the end that activity

[*21] reported significant net losses. During those years, however, Ms. Sarkin, an architect, had significant income, and the losses from the reported Schedule C business generated substantial tax benefits to petitioners.

Accordingly, this factor favors respondent.

I.    Elements of Personal Pleasure or Recreation

The presence of personal pleasure or recreational elements in carrying on an activity may indicate the activity is not engaged in for profit. Sec. 1.183-2(b)(9), Income Tax Regs. The fact that the taxpayer derives personal pleasure from engaging in the activity is not by itself determinative that the activity is not engaged in for profit. See id.

We find credible the testimony of Mr. Jain that he did not derive any personal pleasure from conducting the reported Schedule C business.

Accordingly, this factor favors petitioners.

J.    Conclusion

Of the nine factors listed in section 1.183-2(b), Income Tax Regs., seven favor respondent, one favors petitioners, and one is neutral. After considering the factors and the facts and circumstances of this case, we conclude that Mr. Jain did not have an actual, honest profit objective in operating the reported Schedule C

[*22] business during the years at issue.  Accordingly, the deductions for expenses paid are subject to the limitations of section 183(b).

II.     Section 217 Moving Expenses

Section 217(a) allows a deduction for "moving expenses paid or incurred during the taxable year in connection with the commencement of work by the taxpayer as an employee or as a self-employed individual at a new principal place of work."  Section 217(b)(1) generally defines "moving expenses" as the reasonable expenses of moving household goods and personal effects from the former residence to the new residence and related travel.  It does not include meals.  Sec. 217(b)(1).

Section 217(c) provides conditions for the deductibility of moving expenses.  Moving expenses shall be deductible only if the taxpayer's new principal place of work is at least 50 miles farther from his residence than was his former principal place of work or, if he had no former place of work, is at least 50 miles from his former residence.  Sec. 217(c)(1)(A) and (B).  Section 217(c)(2) provides that no deduction shall be allowed unless (A) the taxpayer is a full-time employee at the new principal place of work during the 12-month period following his arrival in the general location of his new principal place of work for at least 39 weeks or (B) during the 24-month period following the taxpayer's arrival in the

[*23] general location of his new principal place of work, the taxpayer is a full-time employed individual for at least 78 weeks and at least 39 weeks are in the first 12-month period.

Mr. Jain moved to South Africa in 2011 but reported moving expenses for tax years 2012 and 2013, testifying that the move was completed over the two-year period. Mr. Jain testified that the expenses were storage, shipping, and travel costs. Significantly, petitioners did not provide documents for the Form 3902 amounts. Further, petitioners maintained their New York residence.

Finally, the record is devoid of documentation or other evidence that Mr. Jain stayed and worked in a new location for the requisite 39 weeks to be eligible to deduct moving expenses. The conditions of section 217(c) have not been met.

Accordingly, we sustain respondent's disallowance of the deductions for moving expenses.

III.     Unreimbursed Employee Expenses

A taxpayer may deduct unreimbursed employee expenses as ordinary and necessary business expenses under section 162. Lucas v. Commissioner, 79 T.C. 1, 6, (1982). An employee cannot deduct such expenses to the extent that the employee is entitled to reimbursement from his or her employer for the expenditures related to his or her status as an employee. Id. at 7.

**[\*24]** Section 274(d) provides that expenses attributable to travel, including meals while traveling, and to certain "listed property" are not deductible unless the taxpayer substantiates them in accordance with special rules. These rules require the taxpayer to substantiate with adequate records or sufficient evidence corroborating his own statement: (1) the amount of the expense, (2) the time and place of the travel or use of the property, and (3) the business purpose of the expenditure. Balyan v. Commissioner, T.C. Memo. 2017-140, at \*7; sec. 1.274-5T(b), Temporary Income Tax Regs., 50 Fed. Reg. 46014-46016 (Nov. 6, 1985).

The strict substantiation rule requires the taxpayer to maintain records or other documentary evidence adequate to establish the business purpose and other elements of the reported expenditures. See sec. 1.274-5(c)(2), Income Tax Regs. To meet the adequate records requirements, a taxpayer must maintain an account book, a log, or other documentary evidence which, in combination, is sufficient to establish each element of an expenditure. Sec. 1.274-5T(c)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985).

A. Mr. Jain's Forms 2106

Mr. Jain claimed total deductions of $40,028 in his Forms 2106 for the years at issue. Mr. Jain was not an employee during the years at issue.

[*25] Accordingly, petitioners are not entitled to Mr. Jain's Form 2106 deductions.

B.     Mrs. Sarkin's Form 2106

Ms. Sarkin filed a Form 2106 for the 2013 tax year in which she claimed a deduction of $2,868 for vehicle expenses and parking fees, tolls, and transportation expenses and a deduction of $755 for meals and entertainment expenses.  Petitioners' testimony is unsupported by the type of substantiation required by section 274 and is insufficient for us to allow deductions in any amount.

Accordingly, petitioners are not entitled to a deduction for vehicle expenses and parking fees, tolls, and transportation and meals and entertainment expenses for tax year 2013 as they did not substantiate the expenses as required by section 274 and its corresponding regulations.  Further, Ms. Sarkin claimed $955 of deductions for other business expenses for which petitioners did not specify the business purposes, nor did petitioners provide any testimony or other proof to substantiate that her employer would not offer reimbursement.

IV.   Section 6662(a) Accuracy-Related Penalty

Respondent bears the burden of production with respect to petitioners' liability for the accuracy-related penalties at issue and must produce sufficient

[*26] evidence indicating that it is appropriate to impose them. See sec. 7491(c);

Higbee v. Commissioner, 116 T.C. at 446. As part of that burden, respondent

must also show that the written approval requirement of section 6751(b)(1) was

timely complied with. See Graev v. Commissioner, 149 T.C. 485, 493 (2017),

supplementing and overruling in part 147 T.C. 460 (2016); see also Clay v.

Commissioner, 152 T.C. __, __ (slip op. at 44) (Apr. 24, 2019). Respondent aims

to meet his burden of production through the Court's acceptance into evidence of a

Civil Penalty Approval Form, dated September 9, 2015, and signed by the acting

group manager one day later.

On May 7, 2019, the Court ordered the parties to set forth their positions on

the impact of Clay in this case. In response thereto, respondent has informed the

Court that on July 31, 2015, he mailed to petitioners a 30-day letter notifying them

of the revenue agent's proposal of the penalties and their right to challenge the 30-

day letter in the Internal Revenue Service Office of Appeals. Respondent has

made no attempt to include the 30-day letter in the record although he

acknowledged the 30-day letter is in his administrative files; and he makes no

argument that the proposed penalties as set forth in the 30-day letter were

"personally approved (in writing) by the immediate supervisor of the individual

making such determination" for purposes of section 6751(b)(1). On the record

**[\*27]** before us, we therefore cannot conclude that written supervisory approval for the penalties was given before the first formal communication of the penalties to petitioners. See Clay v. Commissioner, 152 T.C. at __ (slip op. at 39-45). Therefore, we find that respondent has failed to meet his burden of production as to the penalties.

We have considered all the other arguments of the parties and, to the extent not discussed above, find those arguments to be irrelevant, moot, or without merit.

To reflect the foregoing,

Decision will be entered

under Rule 155.